F I L E D
CHARLOTTE, N. C.

OCT 2 0 2005

U. S. DISTRICT COURT
W. DIST. OF N. C.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| IN RE: REAL PROPERTY LOCATED AT | ) | *3 05mc 326 - M u* |
| 8322 KNIGHTS BRIDGE ROAD, | ) | |
| CHARLOTTE, NORTH CAROLINA, AS | ) | |
| MORE PARTICULARLY DESCRIBED IN | ) | **ORDER** |
| A DEED RECORDED AT BOOK 11596, | ) | **AND LIS PENDENS** |
| PAGE 811, IN THE MECKLENBURG | ) | |
| COUNTY PUBLIC REGISTRY | ) | |
| ———————————————— | ) | |
| FILE IN GRANTOR INDEX UNDER: | ) | |
| **EVA MARIE PIATT** | ) | |
| ———————————————— | ) | |

WHEREAS, the United States of America, by and through Sgt. Jeffrey Estes of the Charlotte-Mecklenburg Police Department, has presented an affidavit to the Court alleging that the above-captioned property was involved in or facilitated controlled substances trafficking and/or money laundering and/or was the proceeds of such criminal activity, in violation of 21 U.S.C. §801 et seq. and/or 18 U.S.C. §§1956-1957; and,

WHEREAS, the Court, having reviewed the affidavit, finds that there is probable cause to believe that the property was involved in or facilitated controlled substances trafficking and/or money laundering and/or was the proceeds of such criminal activity, in violation of 21 U.S.C. §801 et seq. and/or 18 U.S.C. §§1956-1957; and,

WHEREAS, upon this finding of probable cause, the property may be subject forfeiture to the United States pursuant to 18 U.S.C. §981 and/or 21 U.S.C. §881, and the government is entitled to record a lis pendens to give public notice of the government's forfeiture interest and potential civil and/or criminal forfeiture claim against the property;

THEREFORE, the United States is directed forthwith to file this Order and Lis Pendens with the appropriate state or local public depository to prevent the flight or transfer of the property so that the United States may initiate action to adjudicate forfeiture of the property; and,

ALL WHO READ THIS ORDER AND LIS PENDENS TAKE NOTICE that the property may be subject to forfeiture to the United States in a present or future criminal or civil in rem action before this Court, and any person who has a question as to this action should contact:

> United States Attorney
>        for the Western District of North Carolina
> Attn: William A. Brafford
> 227 West Trade Street, Suite 1650
> Charlotte, NC   28202
> (704) 344-6222

This the 20th day of October , 2005.

_____
Carl Horn, III
UNITED STATES MAGISTRATE JUDGE


**TO THE RECORDER OF THIS INSTRUMENT: MAIL ANY AND ALL RECORDED COPIES TO THE UNITED STATES ATTORNEY FOR THE WESTERN DISTRICT OF NORTH CAROLINA AT THE ABOVE ADDRESS.**

United States District Court for the
Western District of North Carolina

## Affidavit

1. I, Jeffrey Estes, Sergeant assigned to the Violent Crime Unit and Gang Intelligence Unit of the Charlotte-Mecklenburg Police Department, being duly sworn, and states as follows: This affiant is employed as a Police sergeant with the Charlotte-Mecklenburg Police Department, in Charlotte, North Carolina, Mecklenburg County, USA. This affiant has been employed as a sworn officer by the Charlotte-Mecklenburg Police Department for over 12 years. This affiant has been assigned to the Violent Crime Unit and the Gang Intelligence Unit for 6 months during which time he has conducted investigations involving subjects for Federal Firearms and Drug laws as well as violations of the North Carolina Controlled Substance Act. This affiant was previously assigned to the Charlotte-Mecklenburg Police Department Central Division as a Patrol Supervisor and the Highway Interdiction Traffic Safety Unit as a Patrol Officer. During this time, this affiant participated in numerous drug and gun related arrests and investigations. This affiant through personal knowledge, investigation, interviews and conferring with other law enforcement officers obtained the following information regarding the investigation of Eva Piatt. This affiant alleges the facts contained herein establish probable cause for issuance of a search warrant for access to a **Dell notebook computer Model Inspiron 600m, displaying serial number CN-03U652-48643-38M-4728 encompassed in a silver gray plastic case and a Dell notebook computer Model Inspiron 5100 displaying serial number CN-09U807-12961-3CC-4326 encompassed in a blue silver gray plastic case.**

This affiant believes that Eva Piatt and Jason Dolinar used the above listed computers to search for and possibly purchase clandestine laboratory equipment while using the internet. This affiant also believes that Eva Piatt and /or Jason Dolinar would have used the internet to research for clandestine methamphetamine recipes. They may have used the computer to store drug debt sheets and contact co-conspirators in this investigation. This affiant now has possession of both computers.

**Probable Cause**

2. On July 18, 2005, Det. Donna West, Kelly Little and Dan Kellough went to 8322 Knights Bridge Rd in Charlotte, North Carolina. They spoke with Eva Piatt at her residence and received her consent to enter the residence and conduct an interview. Inside the detectives smelled a strong chemical odor. Also during the interview Det. West was able to observe in plain sight in the kitchen area of the apartment, numerous pieces of chemical equipment such as, funnels, Pyrex dishes, beakers and mason jars. Some of these items had traces of a white crystalline powder consistent with the production of methamphetamine. Piatt vehemently denied making methamphetamine and said that she was working on a school project and had a chemistry book to prove it. She invited Det. West to follow her to find the chemistry book. As they walked upstairs to Piatt's bedroom Det. West observed a white crystalline powder in a clear plastic bag lying on the nightstand and an empty Pyrex dish with a crystalline residue on the edges of the dish. When Det. West asked Piatt about the residue in the dish, Piatt stated it was not methamphetamine, but was not sure what it was.

Meanwhile Det. Kellough observed in plain view 23 empty boxes of cold tablets. Det. Kellough asked Piatt about the empty boxes and she remarked that she had allergies. Piatt finally admitted that she was not working on any science project but would not admit to making methamphetamine. At this time the detectives escorted Piatt from her residence and secured her in a patrol vehicle that was standing by. The residence was also secured and Det. West and Kellough proceeded to obtain a search warrant and destruction order from the Mecklenburg County Superior Court Judge Johnson.

3. On that same date, Det. West and Dan Kellough, along with three SBI agents with expertise in recognizing and processing illegal meth labs responded to 8322 Knights Bridge Rd. to execute the search warrant and destruction order. The agents and a chemist tested the atmosphere in the residence and determined that there was a low reading for phosphine gas. This reading is consistent with a meth lab operation. For the next several hours the illegal lab was processed and it was determined that there were materials used for the making of methamphetamine in almost every room of the residence. Some items that were not considered a risk were seized and turned into CMPD Property Control including notebooks, receipts from Wal-Mart for numerous cold tablets and other precursors. The detectives also seized a laptop computer, Dell notebook Model Inspiron 600m with an image of crystal methamphetamine as the screen saver. Eva Piatt was arrested for violations of state drug trafficking laws. She was subsequently released on bond.

4. On August 15, 2005 Detective Dan Kellough responded to 9920 Brickleberry Lane, Charlotte, North Carolina the office of the Thornberry Apartment Complex to meet with an apartment manager in reference to a package that was delivered to the office by UPS which was addressed to Eva Piatt, 9805 Brickleberry Lane, and an apartment in which Eva Piatt once lived. The package was sent from a business that specializes in chemistry glassware called MACNAN Biologicals, 2008 Carraway Lane, Center Point, Alabama. Detective Dan Kellough applied for and obtained a search warrant to enter the package. Inside the package were 3 beakers and 3 hard walled flasks. These items are commonly used in the manufacture of methamphetamine. This order was placed on July 30, 2005. It was delivered on August 3, 2005 but was never picked up.

5. On August 15, 2005, Charlotte Fire Department responded to a medical call at the condominium adjoining 8322 Knights Bridge Road in reference to an occupant having breathing difficulties as a result of a chemical odor emitting from 8322 Knights Bridge Road. Detective Donna West and Dan Kellough responded to the scene and noticed a chemical odor emitting from 8322 knights Bridge Road. Soon thereafter, Eva Piatt arrived at the location and allowed Detective Donna West and Dan Kellough inside 8322 Knights Bridge Road and showed them several glass containers, flasks, funnels, and iodine. While in the residence, Detective West and Kellough observed a "mobile lab" in a gym bag containing glassware, starting fluid, psuedoephederine boxes, and acetone. In a cabinet Detective Donna West observed sand, ether, boiling beads, liquid acid,

several containers of iodine, hydrogen peroxicide containers, and what appeared to be crystallized methamphetamine. Detective Donna West and Dan Kellough secured the scene. Eva Piatt stated to Detective West and Kellough that she would be staying with her boyfriend, Jason Dolinar.

6. On August 24, 2005, Detective Donna West and Dan Kellough obtained a state arrest search warrant for Eva Piatt for Manufacturing Methamphetamine and Maintaining a Dwelling. Detectives went to 12827 Atkins Circle Drive #201, the residence of Jason Dolinar to arrest Eva Piatt. Upon entering the apartment Detective Kellough observed white and green cold allergy boxes in a white somewhat transparent bag on the floor near the kitchen in plain view. These cold/allergy medicine boxes were consistent in size and color with boxes seized at 8322 Knights Bridge Road. Detective Donna West asked Eva Piatt if an ADIDAS bag, which was located in the back bedroom, belonged to her. Piatt replied that it was hers. Piatt gave Detective West permission to look inside the bag. Detective West located six blister packs of cold and allergy medication and also a Wal-Mart bag containing three boxes still sealed. Meanwhile Detective Kellough observed a one gallon canister of Naphtha, which is a solvent, 32 ounce container of Acetone which is also a solvent, a gallon of Phosphorous acid, a coffee grinder, and a 7x5 Pyrex dish with a white residue, a straw with white residue and a small zip lock baggie of suspected methamphetamine. These items (the solvents, cold/allergy medicine, and coffee grinder), are commonly used in the manufacture of methamphetamine. Jason Dolinar stated

that he lived at the apartment alone and that Eva Piatt was staying with him. Eva Piatt had clothing and other personal belongings in his apartment.

7. Following the arrest of Piatt, a state search warrant was obtained for Jason Dolinar's residence, 12827 Atkins Circle Dr. #201 by Detective Donna West. The warrant was executed at the above residence and the detectives seized seven firearms from a gun safe. In addition to the seized firearms the detectives seized the precursor contents from the Adidas bag that was previously mentioned in the above paragraph. Detective West also seized a small amount of suspected methamphetamine powder. Also found in the main portion of the bag was a Pyrex quart pitcher that was still wet with some type of liquid. Both bags were found in close proximity to the closed gun safe and the firearms. Detective West also found an overnight bag in the master bedroom which contained toiletries and a hidden bottom which contained three blister packs of cold tablets.

8. During the search of Dolinar's residence, 12827 Atkins Circle Dr. #201, officers observed a Dell notebook computer Model Inspiron 5100 in the apartment. The computer's screen showed a website for a company that sold chemistry equipment. The specific webpage displayed was for the sale of a 22 liter heating mantle. If purchased over the website, the mantle would have been delivered by US Mail or delivery service such as UPS. Such mantles are commonly used in large scale methamphetamine production operations.

9.      10. On August 25, 2005, the CMPD Watch Commander, Captain Mike Adams, received a call from the manager of the residence complex that

includes Jason Dolinar's residence described above. The manager advised that UPS delivered a package on August 25, 2005 to the management office that was addressed to Jason Dolinar. The package appeared to be sent from a chemical supply company named Avogadro's Lab Supply Co. located in Setauket, New York. The manager turned over the package to CMPD officers

11. On September 29, 2005, Det. Scott Maxfield contacted the owner of the Avogardo's Lab Supply at 631 751-8808, James Callan. Mr. Callan stated that Jason Dolinar ordered the 24/40 RB 2000 ml flask on August 23, 2005 online through EBay and paid for the flask through Pay Pal which has an account for Dolinar. Mr. Callan then sent the flask to Dolinar's residence at 12827 Atkins Circle Drive #201, Charlotte, North Carolina via UPS Ground.

12. On September 30, 2005, Det. Scott Maxfield contacted Macnan Biologicals, 2008 Carraway Lane, Birmingham, Alabama, phone 205 853-2711. Det. Maxfield spoke with the co-owner of the business, Nancy McNamara. She stated that Eva Piatt had purchased chemical equipment on three separate occasions for delivery to Eva Piatt's residences at 10304 Layton Ridge Lane, Charlotte, North Carolina and 9805 Brickleberry Lane Apt#209, Charlotte, North Carolina. Eva Piatt paid for the equipment through her Pay Pal account. All three transactions were completed on EBay over the internet using a computer.

13. Based upon discussions with persons having knowledge of the production of methamphetamine, the operations described in this affidavit would and/or could have produced in excess of fifty grams of methamphetamine, its salts, isomers and salts of its isomers.

14. Based on the information herein, this affiant requests that a search warrant be issued for a **Dell notebook computer Model Inspiron 600m, displaying serial number CN-03U652-48643-38M-4728 encompassed in a silver gray plastic case** that was seized at 12827 Atkins Circle Drive #201, Jason Dolinar's residence. There is cause to believe that the computer seized from Dolinar and Piatt at the time of their arrest was used to facilitate the research of the manufacturing of methamphetamine and/or purchase of materials in its production.

15. Based on the information herein, this affiant requests that a search warrant be issued for a **Dell notebook computer Model Inspiron 5100 displaying serial number CN-09U807-12961-3CC-4326 encompassed in a blue silver gray plastic case** that was seized at 8322 Knights Bridge Road, Charlotte, North Carolina.

16. Therefore there is probable cause to believe that electronic evidence of violations of Title 21, United States Code, Sections 846, 841 and Title 18, United States Code, Section 2 will be found in the following notebook computers:

**Dell notebook computer Model Inspiron 600m, displaying serial number CN-03U652-48643-38M-4728 encompassed in silver gray plastic case.**

**Dell notebook computer Model Inspiron 5100 displaying serial number CN-09U807-12961-3CC-4326 encompassed in a blue silver gray plastic case.**

## Property to be seized:


## Computer Related Evidence:


This affiant knows that computer hardware, software, documentation, passwords, and data security devices may be important to a criminal investigation in two distinct and important respects: (1) the objects themselves may be instrumentalities, fruits or evidence of a crime, and/or (2) the objects may have been used to collect and store information about crimes (in the form of electronic data). Rule 41 of the Federal Rules of Criminal Procedure permits the government to search and seize computer hardware, software, documentation, passwords, and data security devices which are (1) instrumentalities, fruits, or evidence of a crime; or (2) storage for information about crime.


Computer hardware consists of all equipment which can collect, analyze, create, display, convert, store, conceal, or transmit electronic, magnetic, optical, or similar computer impulses or data. Hardware includes (but is not limited to) and any data-processing devices (such as central processing units, memory typewriter, and self-contained "laptop" or "notebook" computer); internal and peripheral storage devices (such as fixed disks, external hard disks, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, transistor-like binary devices, and other memory storage devices); peripheral input/output devices ( such as keyboards, printers, scanners, plotters, video display monitors,

and optical readers): and related communications devices (such as modems, cables and connections recording equipment, RAM or ROM units, acoustic couplers, automatic dialers, speed dialers, programmable telephone dialing or signaling devices, and electronic lone-generating devices); as well as any devices, mechanisms, or parts that can be used to restrict access to computer hardware (such as physical keys or locks).

Computer software is digital information which can be interpreted by a computer and any of its related components to direct the way they work. Software is stored in electronic, magnetic, optical, or other digital form. It commonly includes programs to run operating systems, applications (like word-processing, graphics or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

Computer-related documentation consists of written, recorded, painted, or electronically stored material which explains or illustrates how to configure or use computer hardware, software, or related items.

Computer passwords and other data security devices are designed to restrict access or hide computer software, documentation, or data. Data security devices may consist of hardware, software, and other programming code. A password (a string of alphanumeric characters) usually operates as a sort of digital key to "unlock" particular data security devices. Data security, hardware may include

encryption devices, chips, or circuit boards. Data security software or digital code may include programming code that creates "tests" keys or "hot" keys, which perform certain per-set security functions when touched. Data security software or code may also encrypt, compress, hide, or "booby-trap" protected data to make it inaccessible or unusable, as well as reverse the process to restore it. Based on the facts as recited above, affiant believes that he has probable cause to believe the following records are located in the aforementioned laptop computer and contain evidence of the crimes described:

All records related to the illegal manufacturing of methamphetamine including but not limited to, internet websites used to order and purchase chemical supplies and equipment, e-mail correspondence relating to any of these orders, and purchaser, as well as unknown e-mails of any co-conspirators known or unknown, lists of customers and related identifying information; types and amounts of drug activities, as well as dates, places and amounts of specific transactions, any related drug suspects or sources of supply; to include names, addresses, phone numbers, or any other identifying information; any information recording the suspects schedule of travel, all bank records, checks, credit card bills, account information, and other financial records.

Sgt. Jeffery Estes

Certified to be a true and
correct copy of the original.
U.S. District Court      Carl Horn III
Frank G. Johns, Clerk    United States Magistrate
Western District of N.C.
By: _____
Deputy Clerk
Date_____10  2(  (5